Gerald ENGLISH, Petitioner,

v.

Christopher ARTUZ, Superintendent,
Green Haven Correctional
Facility, Respondent.

No. CV 96–1894.

United States District Court,
E.D. New York.

Jan. 9, 1998.

Jeffrey A. Udell, New York City, for petitioner.

Richard A. Brown, District Attorney, Queens County, (John M. Castellano, Emil Bricker, of Counsel), Kew Gardens, NY, for respondent.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Petitioner Gerald English brought this proceeding on April 19, 1996 for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

He was convicted in March 1985 after a jury trial in New York Supreme Court, Queens County, of murder in the second degree and criminal possession of a weapon in the second degree, and sentenced by Justice John J. Leahy to two concurrent terms of twenty-five years to life on the murder count and five to fifteen years on the weapons count.

The Appellate Division, Second Department, affirmed on August 7, 1989. *People v. English*, 153 A.D.2d 575, 544 N.Y.S.2d 503 (2d Dep't 1989). The New York Court of Appeals denied leave to appeal on December 21, 1989. *People v. English*, 75 N.Y.2d 770, 551 N.Y.S.2d 912, 551 N.E.2d 113 (1989).

The main witness for the prosecution at trial was one Perry Bellamy. Indeed his testimony was the only evidence implicating petitioner in the crimes.

Petitioner makes two claims. First, he says that because all spectators, including his family members, were excluded from the courtroom during Bellamy's testimony, his Fourteenth Amendment and Sixth Amendment rights to a public trial were violated. Second, he argues that the cross examination of Bellamy was so curtailed by the court as to deny him his Sixth Amendment right to confrontation.

### I

On motion of the prosecutor, Justice Leahy closed the courtroom to all spectators, including petitioner's family and friends, during the testimony of Bellamy on the ground that Bellamy feared for his life were he to testify in an open courtroom. Justice Leahy held a hearing on the prosecutor's motion. Bellamy testified and was questioned by the prosecutor, counsel for petitioner, and counsel for

each of petitioner's two co-defendants, Daniel Staley and Ronnie Simpson.

Bellamy and four other persons, including one Bernard Williams, had stolen about a hundred thousand dollars and half a kilogram of cocaine from Staley's drug spot. Bellamy and Williams had known each other many years. They had been partners in crime and had worked together selling cocaine for Staley at his "spot."

Some four weeks after the robbery Williams received word that Staley wished to see him and Bellamy in Brooklyn. Bellamy and Williams then drove to the apartment of Staley's girlfriend. When they arrived they found Staley, Simpson, who was Staley's "bodyguard," petitioner, and others.

After a while Staley's girlfriend gave Williams, who smoked cocaine and sniffed dope, about half a gram of cocaine. Thereafter Staley gave Williams a glassine bag of beige colored drugs that looked like "raw dope." Bellamy went to another room and watched television for a while until Staley called him into another room, handed him a .357 Magnum, and said "give this to Ron," meaning Simpson. Bellamy handed the weapon to Simpson. After that Staley purported to get annoyed with the crowded condition in the apartment, saying "I don't know what you all crowded up in here for." Petitioner then approached Williams, who was very "high" and staggering, and said, "Come on, let's get out of here." Simpson, Williams, and petitioner then walked out the door.

About three hours later Simpson and petitioner came back to the apartment, and Staley asked "What did you do with him?" Petitioner "was going to say something" when Simpson interrupted and said, "We dumped him over there where they dump garbage." Thereafter Williams' dead body was found.

Bellamy said at the pretrial hearing that of the five persons who robbed Staley three were dead, one hospitalized and a "vegetable," and that he was the sole survivor. When the prosecutor asked Bellamy if he was prepared to testify if family members and friends of "the defendant" were present, Bellamy answered that for his own safety he would not testify.

Staley's attorney asked Bellamy on cross-examination whose family members he was referring to. Bellamy responded, "Danny's [Staley's] family members," and added "as long as his family is in here, I won't testify." On cross-examination by petitioner's attorney, Bellamy testified that he "would be willing to testify" if petitioner's family were in the courtroom.

At the close of the hearing Justice Leahy asked the prosecutor to address the suggestion of petitioner's attorney that at least petitioner's family members be allowed to attend. The prosecutor's only comment was, "We have no way of determining who those people are." Justice Leahy forthwith ruled that there was a "manifest necessity" to grant the prosecution's application to close the courtroom during Bellamy's testimony.

The Appellate Division wrote no opinion but entered an order referring to its comments in affirming the conviction of petitioner's co-defendant Simpson, *People v. Simpson*, 153 A.D.2d 596, 544 N.Y.S.2d 381 (2d Dep't 1989), and concluding that petitioner had not raised any argument requiring a different result.

## II

The Sixth Amendment to the Constitution includes the provision that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." By virtue of the Fourteenth Amendment an accused in a state prosecution has the same right to a public trial. *See Klopfer v. North Carolina*, 386 U.S. 213, 222, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967).

In *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984), the Supreme Court formulated the rules for closure of a trial or a hearing in a criminal case as follows: [1] "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, [4] and it must make findings adequate to support the closure."

The chief question is whether, by closing the courtroom even as to petitioner's family and friends during the testimony of Bellamy, the trial court denied petitioner his right to a public trial.

The attorney for petitioner asked the trial judge to consider the option of "allow[ing] [petitioner's] relatives, who [were] present and very much interested in what's going on in th[e] proceeding, to be in the courtroom." The trial judge, without giving any reason for rejecting the request beyond saying there was "clear and convincing proof" of a "manifest necessity" to close the courtroom during Bellamy's testimony, granted the prosecutor's application to exclude all spectators. When Bellamy was called to testify at trial, the prosecutor reviewed the application for closure, petitioner's counsel renewed his objection, and the judge cleared the courtroom of "all spectators."

The Court of Appeals for the Second Circuit has held *en banc* that under the Sixth Amendment "any closure" of a trial over the objections of the accused must meet the tests formulated in *Waller. Ayala v. Speckard,* 131 F.3d 62, 69 (2d Cir.1997). Those tests were not met here.

Petitioner urges that there was no such serious risk to an important interest as to justify any closure. He admits that Bellamy was fearful of the defendant Staley, and rightly so, but he points out that Staley already knew the substance of Bellamy's testimony from the grand jury minutes and in any event would hear what Bellamy said at trial. The court will assume for purposes of argument that the danger to Bellamy from Staley would be sufficient to justify an order closing the courtroom during Bellamy's testimony at least as to Staley's friends and family.

But the order made by Justice Leahy was "broader than necessary." *Waller,* 467 U.S. at 48, 104 S.Ct. at 2216.

When asked whose "family members" he feared, Bellamy said it was Staley's family members, and he testified that he would be willing to testify if petitioner's family was in the courtroom.

The prosecutor argued that there was no way of determining whether the persons said to be petitioner's family were such. To say the least this was a flimsy argument. Petitioner's attorney represented to the court that petitioner's family members were present in the courtroom and were interested in the proceedings. It would hardly have been an onerous task for court officers or the judge himself to have obtained identification from the relatives defense counsel had represented as being present.

Bellamy had no hesitancy in testifying in the presence of petitioner's family. The prosecutor, "the party seeking to close the hearing", and not petitioner, had the burden of satisfying the four factors set forth in *Waller. Id.* The trial judge was obliged to recognize that open trials are strongly favored and to "require persuasive evidence," not flimsy speculation unsupported by the testimony of the person most concerned, of a serious risk to Bellamy's safety before excluding petitioner's family. *Ayala* at 70.

The third and fourth factors of *Waller* were not met. Despite the specific suggestion by petitioner's counsel of a "reasonable alternative" to the prosecutor's proposal of total closure, the court brushed aside the suggestion. The court made no "findings adequate to support the closure." The court simply stated its conclusion without articulating any rational grounds in support of that conclusion and without even addressing petitioner's suggestion of an alternative or indeed the prosecutor's argument that that alternative should not be adopted.

As long ago as 1948 the Supreme Court held in *In re Oliver,* 333 U.S. 257, 272, 68 S.Ct 499, 507, 92 L.Ed. 682(1948), that "an accused is at the very least entitled to have his friends, relatives, and counsel present, no matter with what offense he may be charged." The Court of Appeals for the Second Circuit, citing *In re Oliver,* said in *Guzman v. Scully,* 80 F.3d 772, 775 (2d Cir.1996), that there is "a special concern for assuring [the] attendance of [a] defendant's family members and friends."

In *Guzman* the court granted the writ and stated that "exclusion of courtroom observers, especially a defendant's family members

and friends, even from a part of a criminal trial", is not a step to be taken lightly. *Id.* at 776. *See also Vidal v. Williams,* 31 F.3d 67, 69 (2d Cir.1994) (granting habeas corpus where defendant's parents excluded during testimony of undercover officer). In petitioner's trial Bellamy's testimony was not a minor or insignificant part of the trial. That testimony was the only evidence implicating petitioner in the crime.

The prosecutor argues that if this court were to grant the writ it would improperly adopt retroactively a "new rule" of law in a habeas corpus case contrary to *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), as did the court in *Vidal.* That argument has no substance. *Vidal* simply applied the analysis previously enunciated in *Waller.* This court follows the same course.

The court has considered the prosecutor's other contentions and finds them without merit.

Because the court grants the writ for the reasons stated above it need not reach the merits of petitioner's second claim.

The Petition for a writ of habeas corpus is granted. If the indictment is not moved for retrial within sixty days of the date of this memorandum and order, petitioner shall be released from custody with respect to the charges contained in the indictment.