Peter VIDAL, Petitioner–Appellant,

v.

Joseph WILLIAMS, Superintendent of Fulton Correctional Facility, Respondent–Appellee.

No. 1750, Docket 93–2548.

United States Court of Appeals, Second Circuit.

Argued June 2, 1994.

Decided July 29, 1994.

Diane E. Courselle, Staff Atty., New York City (Office of the Appellate Defender, New York City, Ira Mickenberg, for petitioner, Joseph M. Nursey, Supervising Atty., counsel), for petitioner-appellant.

Alan S. Rafterman, Asst. Dist. Atty., Bronx, NY (Robert T. Johnson, Dist. Atty., Bronx County, Allen H. Saperstein, Asst. Dist. Atty., of counsel), for respondent-appellee.

Before: NEWMAN, Chief Judge, LUMBARD and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Peter Vidal appeals from a judgment of the District Court for the Southern District

of New York, Preska, *J.*, dismissing his petition for a writ of habeas corpus. The district court held that Vidal's Sixth Amendment right to a public trial was not violated when his criminal trial in the New York Supreme Court, Bronx County, was closed to the public—including Vidal's parents—during the testimony of an undercover police officer. As we conclude that the exclusion of Vidal's parents was improper, we reverse and remand.

## I.

The trial testimony showed the following. On January 5, 1988, undercover police officer Irvin Noak, police officer James O'Connell, and a backup team conducted a "buy and bust" operation at a small grocery store at 866 Union Avenue in the Bronx. Noak entered the store and offered to purchase crack cocaine from Vidal who was working behind the counter. Vidal offered to sell a $20 vial of crack, which Noak purchased with prerecorded buy money. Noak then left the store and radioed Vidal's description to O'Connell, who was waiting a few blocks away. O'Connell and the backup unit arrested Vidal and three other individuals, and seized twenty-nine vials of crack cocaine and $10 of the prerecorded buy money. Noak then drove by the front of the store and identified Vidal as the seller.

Vidal was charged with sale of a controlled substance, possession with intent to sell a controlled substance, and possession of a controlled substance. At trial, the state called Officers O'Connell and Noak. Prior to Noak's testimony, the prosecution made an application to close the courtroom during Noak's testimony in order to protect his identity as an undercover officer.

At an in camera hearing, Noak testified that he was still working undercover in an anti-crack unit that operated in the vicinity of 866 Union Avenue. He feared that his life would be in danger if his identity became known, as other undercover officers had been threatened or harmed after their identities had been disclosed.

Defense counsel requested that Vidal's parents, who were present at trial, be allowed to remain in the courtroom during Noak's testimony. Vidal's parents lived near the courthouse on Gerard Avenue, and to counsel's knowledge they did not frequent the vicinity of 866 Union Avenue.

The court granted the prosecution's application and closed the courtroom during Noak's testimony. The court found that Noak feared for his life and safety, that Noak was still involved in undercover activities in the same area, and that other undercover officers had been threatened and even wounded. The court closed the courtroom to Vidal's parents because Noak worked in a Bronx-wide unit, there were many high-drug areas near the courthouse, and "it's conceivable and entirely possible that the officer may be recognized by them while he's involved in another undercover operation, and if the defendant is convicted, ... [his parents] may not have a fondness for the officer."

Vidal was convicted of one count of possession of a controlled substance and one count of sale of a controlled substance, and was sentenced to two concurrent prison terms of five to fifteen years. The Appellate Division affirmed the conviction, *People v. Vidal,* 172 A.D.2d 228, 567 N.Y.S.2d 727 (1st Dept.1991), and the Court of Appeals denied leave to appeal, *People v. Vidal,* 78 N.Y.2d 927, 577 N.E.2d 1072, 573 N.Y.S.2d 480 (1991).

On January 11, 1993, Vidal filed a petition for a writ of habeas corpus in the Southern District, claiming that the state had violated his Sixth Amendment right to a public trial. On July 20, 1993, the court denied the application without a hearing, finding that the closure was justified under the circumstances. Vidal appeals, arguing that the trial court was required to keep the courtroom open to the general public, or at least to his parents.

## II.

A criminal defendant's Sixth Amendment right to a public trial "may give way in certain cases to other rights or interests." *Waller v. Georgia,* 467 U.S. 39, 45, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). A court may close a criminal trial over the defendant's objection if the following requirements are met:

■ the party seeking to close the [trial] must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.

*Id.* at 48, 104 S.Ct. at 2216. At issue is whether the exclusion of Vidal's parents was "necessary to protect" the state's interest in assuring Noak's safety.[1] We conclude that it was not.

The state argues that it was necessary to exclude Vidal's parents to prevent them from recognizing Noak during an undercover operation and disclosing his identity as retribution for their son's conviction. We disagree. There was no evidence that Vidal's parents were inclined to harm a police officer. In fact, the prosecutor stated that to the best of his knowledge Vidal's parents were "very decent individuals."

More importantly, there was little chance that Vidal's parents would have encountered Noak during an undercover operation. The trial court found that an encounter was likely because Vidal's parents lived in the Bronx and Noak's unit operated throughout the Bronx. However, the Bronx covers 41 square miles and has 1.2 million residents. *See People v. Martinez,* 82 N.Y.2d 436, 443, 624 N.E.2d 1027, 1031, 604 N.Y.S.2d 932, 936 (1993). A chance meeting somewhere in the Bronx was unlikely. The exclusion was not justified.

The state argues that two facts made an encounter likely. First, Gerard Avenue, where Vidal's parents lived, is in the vicinity of 866 Union Avenue, where the arrest occurred and where Noak still worked undercover. In support of this argument, the state asks us to take judicial notice that the two locations are less than three miles apart. The argument is not persuasive. In New York City, two locations three miles apart are hardly in the same vicinity. Almost seventy percent of the Bronx (and 830,000 people) could fit within three miles of 866 Union Avenue.

Second, the state argues that an encounter would be likely because the parents lived in a "high drug area." Again, we are not persuaded. Despite the state's assertions, the trial judge did not find that Vidal's parents lived in a high drug area. The trial judge merely noted that the parents lived on Gerard Avenue (which is near the courthouse), and that "there are areas not far from the courthouse that are known as high drug areas." Thus, the record only indicates that Vidal's parents lived *near* a high drug area. Given the scope of the drug problem in the Bronx, there is minimal risk that two people who happen to live near a high drug area will have a chance meeting with a specific undercover officer working throughout the borough.

In sum, the state is asking this court to hold that a courtroom can be closed to a defendant's relatives as long as the relatives live (or, presumably, work) in the county where the undercover officer operates. Such a holding would violate the rule that closure is reserved for rare circumstances in which "the balance of interests [are] struck with special care." *Waller,* 467 U.S. at 45, 104 S.Ct. at 2215. Moreover, the Supreme Court has specifically noted a special concern for assuring the attendance of family members of the accused. *See In re Oliver,* 333 U.S. 257, 271–72 & n. 29, 68 S.Ct. 499, 506–07 & n. 29, 92 L.Ed. 682 (1948). Finally, we observe that the trial court gave no consideration to less restrictive alternatives such as screening devices to conceal the witness's identity. *See United States v. Lucas,* 932 F.2d 1210, 1216–17 (8th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991).

As the petitioner need not show prejudice, *Waller,* 467 U.S. at 49–50, 104 S.Ct. at 2217, we reverse the district court's denial of the writ of habeas corpus, and remand for entry of an order granting the petitioner's release unless the state affords him a new trial within a reasonable time.

Reversed and remanded.

---

1. Vidal also contests the exclusion of the general public. Because we reverse on the ground that the exclusion of his parents was improper, we do not decide that issue.