Mario GONZALEZ, Petitioner–
Appellant,

v.

Pedro QUINONES, Superintendent, Mt.
McGregory Correctional Facility, and
Eliot Spitzer, Attorney General of
New York, Respondents–Appellees.

Docket No. 99–2372

United States Court of Appeals,
Second Circuit.

Argued: March 3, 2000
Decided: May 4, 2000

Lori L. Shellenberger, Legal Aid Soci-
ety, Criminal Appeals Bureau, New York,
NY, for Petitioner–Appellant.

Sholom J. Twersky, Assistant District
Attorney, Kings County (Charles J.
Hynes, District Attorney, and Roseann B.
MacKechnie, Assistant District Attorney
on the brief) for Respondents–Appellees.

Before: OAKES, LEVAL and SACK, Circuit Judges.

LEVAL, Judge:

Petitioner Mario Gonzalez filed a habeas corpus petition under 28 U.S.C. § 2254 contending that his Sixth Amendment right to a public trial was violated when a court officer at his state court trial, unbeknownst to the trial judge, locked the doors to the courtroom for a period that encompassed the testimony of two witnesses. This occurred as the result of a misunderstanding of the unusual procedure described below. The United States District Court for the Eastern District of New York (Nina Gershon, *Judge*) denied the petition on the grounds that the closure was "trivial" and "inadvertent" and, therefore, did not rise to the level of constitutional error under this court's jurisprudence.

Petitioner argues that the duration of the closure and the importance of the testimony heard while the doors were closed preclude a finding that the closure was "trivial." We agree with petitioner that the closure in his case was more substantial than those we have previously considered "trivial." Nonetheless, it does not necessarily follow that petitioner's rights were violated. The closure occurred through the malfunctioning of a procedure the parties had set in place to avoid the need to interrupt the trial for a hearing to determine whether the closure sought by the People was justified. If instead the hearing had been held and the court had determined that closure was justified, the courtroom would have been closed by the Judge's order without impairment of petitioner's rights. We remand for a hearing to determine whether the circumstances, as they existed at the time, justified the closure of the courtroom. *Cf. Nieblas v. Smith*, 204 F.3d 29, 32–33 (2d Cir.1999) (approving the use of a reconstruction hearing when there is insufficient evidence in the record to sustain a courtroom closure).

## BACKGROUND

Petitioner and a co-defendant were charged in New York state court with criminal sale of a controlled substance, after being arrested pursuant to a buy-and-bust operation. As the trial progressed, the state moved to close the courtroom for the testimony of two undercover officers, contending that the safety and effectiveness of the undercover officers required that they be permitted to testify without showing their faces to the public. With the agreement of all parties, the court adopted a strategy to avoid interrupting the trial with a hearing on the justification for closure.[1] It was stipulated that a guard would be placed outside the courtroom during the officers' testimony and would check identification of would-be visitors. The guard would admit members of the defendants' families and attorneys from the Legal Aid Society, which represented petitioner. If no other person sought admission, the trial could conclude without need to interrupt for a hearing on the necessity of closure. If anyone else asked to enter, the officer would inform the judge; the court would then interrupt the trial and hold a hearing to determine whether the courtroom should be closed. The procedure was thus designed to avoid wasting time in a hearing that might prove unnecessary if no members of the public sought admittance.

The first undercover officer began his testimony under this procedure, with a court officer at the door, instructed to admit the defendants' families and members of their lawyers' offices and to advise if anyone else sought to be admitted. The next day, April 6, 1995, the sergeant in

---

**1.** The transcript of the proceedings furnished to us does not contain the colloquy in which the People moved for closure and the above stipulation was initially proposed as a substitute for a hearing on the justification for closure. Nonetheless, the purpose of the procedure adopted is self-evident. *See* Trial Transcript at 345–46 (entering stipulation).

charge of the security detail found himself short of officers. Perhaps based on a misunderstanding, the sergeant at some point during the morning decided that the courtroom door be locked rather than guarded by an officer. In the course of the morning, three lawyers from Legal Aid came to the courtroom door to observe the trial and found it locked. They reported this to petitioner's attorney during the lunch recess.

At the start of the afternoon session, petitioner's counsel moved for a mistrial on the ground of the closure of the courtroom. The Judge, who had apparently also learned what had happened, denied the motion, and instructed the court officers to adhere strictly to the terms of the stipulation during the testimony of the second undercover officer. The second officer testified, in accordance with the stipulation, with the door guarded by an officer instructed to admit the petitioners' families and members of their attorneys' offices and to notify the judge if any visitor outside these excepted categories arrived. None did. At the conclusion of the trial, the petitioner and his co-defendant were convicted of one count of Criminal Sale of a Controlled Substance in the Third Degree, *see* N.Y. Penal Law § 220.39(1), and sentenced to four and one-half to nine years in prison.

Gonzalez appealed, claiming, inter alia, that his Sixth Amendment right to a public trial was violated by the locking of the courtroom door on the morning of April 6, 1995. The appellate division affirmed, *see People v. Gonzalez*, 237 A.D.2d 302, 655 N.Y.S.2d 375 (2d Dep't 1997), and the Court of Appeals denied leave to appeal, *see People v. Gonzalez*, 89 N.Y.2d 1093, 660 N.Y.S.2d 387, 682 N.E.2d 988 (1997). By petition dated May 6, 1998, petitioner filed a timely habeas corpus petition, alleg-

ing a Sixth Amendment violation. By opinion dated May 26, 1999, the district court denied the petition on the grounds that the courtroom closure was "trivial" and "inadvertent" and therefore did not rise to the level of a constitutional violation. Petitioner appeals.

## DISCUSSION

■ Petitioner challenges the district court's conclusion that the closure was too trivial to amount to a constitutional violation. This court has held, as have two other circuits, that, a brief and inadvertent closing of a courtroom, depending on the circumstances, can be too "trivial" to give rise to a constitutional violation. *See Peterson v. Williams*, 85 F.3d 39, 44 (2d Cir.1996); *see also United States v. Al-Smadi*, 15 F.3d 153, 154–55 (10th Cir. 1994); *Snyder v. Coiner*, 510 F.2d 224, 230 (4th Cir.1975). The district court believed that this case is governed by *Peterson*, in that it involved a brief closure done without the knowledge or intention of the judge.

While this case has similarities with *Peterson*, petitioner points to various differences. In *Peterson*, the inadvertent closure lasted no more than twenty minutes, *see Peterson*, 85 F.3d at 42 n. 2; here, the closure may have extended the full morning.[2] In *Peterson*, the problematic closure occurred as the result of the accidental failure to reopen after a properly ordered closure, whereas here the door was intentionally locked by court personnel. There, the brief testimony elicited during the closure was repeated substantially verbatim in defendant's summation within minutes of the opening of the doors, *see id.* at 43; the same did not happen here. There, the testimony during the closure was limited to the defendant's own, *see id.*, here (we

---

**2.** The record does not reflect whether the door was locked at the start of the morning session or at some later point during the morning. The parties have proceeded on the assumption that the door was locked all morning, and that this closure encompassed a

part of the testimony of the first undercover and the brief testimony thereafter of the police chemist. Despite the absence of any clear indication of what time the door was locked, we accept this assumption for purposes of this ruling.

738

assume) it included the testimony of the primary prosecution witness—the only witness who made a positive identification of the defendant as a participant in the drug transaction—as well as the testimony of the police chemist. Finally, in *Peterson* there was no indication that anyone tried to enter the courtroom during the closure, *see id.* at 42, 44 n. 7; here, three visitors from the Legal Aid office came to observe the trial and were prevented from doing so. In view of these differences, we do not believe the closure can be considered so "trivial" as to fall outside constitutional protection.

 Nonetheless, a non-trivial closure does not necessarily entitle the petitioner to habeas corpus relief. Temporary closure, even for important proceedings, is permitted if closure is justified by the circumstances. *See Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The procedures whose malfunction led to the unintended closing were designed to obviate the need for a hearing to determine whether the closing was justified. Had the customary hearing been held on the People's application for closure, and had the trial judge made a properly supported finding of an "overriding interest that is likely to be prejudiced," *id.,* the courtroom would have been closed during the testimony of the undercover officer, by the trial judge's intentional lawful action, rather than as the result of the misunderstanding that occurred. We have repeatedly held that, under appropriate circumstances, courts may properly order courtrooms closed during the testimony of undercover police officers, in order to protect both the officers' safety and their future effectiveness. *See, e.g., Ayala v. Speckard,* 131 F.3d 62, 72 (2d Cir.1997) (in banc); *Nieblas,* 204 F.3d at 33; *Bobb v. Senkowski,* 196 F.3d 350, 353–54 (2d Cir. 1999); *Brown v. Kuhlmann,* 142 F.3d 529, 537 (2d Cir.1998).

The crucial question is whether the circumstances justified the closure. Because the court adopted a stipulated procedure to avoid investing time in a hearing that might prove unnecessary if no visitors arrived, the record does not contain the information the People would have proffered in support of the application for closure. Under these unusual circumstances, we believe the best course is to remand the case to the district court for a hearing to reconstruct the circumstances that existed at the time of the trial and to determine whether the application to close the courtroom was well justified. As we recently held in *Nieblas,* a federal court considering a habeas petition premised on a closure of the courtroom is not limited to the factual record developed at trial, but may, in its discretion, hold a reconstruction hearing in order to gather more information as whether the closure was proper under the circumstances of the case. 204 F.3d at 32–33. While the procedural facts of *Nieblas* were slightly different, in that a contemporaneous hearing was held at which the state made a showing the habeas court later deemed insufficient, its rationale is equally applicable here.

 We note furthermore that, while the district court has the discretion to hold the reconstruction hearing itself, it also has another option. If the district court believes it would be preferable for the inquiry to be conducted by the state court that initially conducted the trial, the district court may hold its proceedings in abeyance, allowing the People to apply to the New York trial court for such a hearing. *Cf., e.g., Tankleff v. Senkowski,* 135 F.3d 235, 250 (2d Cir.1998) (remanding a *Batson* claim to the district court with the instruction to hold a reconstruction hearing or return the case to the state court for such a hearing); *Howard v. Senkowski,* 986 F.2d 24, 30 (2d Cir.1993) (same).[3]

3. Our decision in *Howard* instructs the district court either to hold the hearing itself or to "return the matter, through the device of a

conditional writ, to the state court so that the proper analysis may be made there." *Howard,* 986 F.2d at 30; *see also Tankleff,* 135

At oral argument, petitioner asserted that a reconstruction hearing would serve no purpose, because the closure encompassed also the testimony of the police chemist, as to whom the People did not claim any justification for closure. We disagree. The testimony of the chemist was brief (under 20 minutes), perfunctory, and uncontested. If the closure during the testimony of the undercover was justified under the standards of *Waller*, the unjustified extension through the testimony of the chemist was, as in *Peterson*, 85 F.3d at 42, a "trivial" violation that would not justify vacating a conviction.

If, upon reviewing the results of a reconstruction hearing, the district court determines that the People have shown justification under the *Waller* standards for closing the court during the testimony of the undercover officer, then the district court should deny the petition. If the circumstances did not justify closing the courtroom for the undercover's testimony, the petition should be granted.

## CONCLUSION

The decision of the district court is VACATED and the case REMANDED for proceedings as outlined herein.

F.3d at 250 (offering "remand" to the state courts as a possibility and citing *Howard* for procedural guidance). We note that, while a conditional writ would certainly accomplish these ends, the granting of such a writ is not the only procedural device open to the district court. A district court may, state law permitting, simply hold its own proceedings in abeyance, allowing the parties to petition the state court for further fact-finding. While this approach is in many respects similar to a conditional grant of habeas corpus, it may be more conducive to the interest of comity as it does not constitute a threat to invalidate a state judgment if the state court does not do what the federal court prescribes. It rather offers the state court the opportunity to conduct the inquiry into the facts. The state court's failure to do so would not necessarily result in the voiding of the judgment.