The STATE of Ohio, Appellee,

v.

WASHINGTON, Appellant.

[Cite as *State v. Washington* (2001), 142 Ohio App.3d 268.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 78005 and 78006.

Decided April 16, 2001.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Aaron Phillips,* Assistant Prosecuting Attorney, for appellee.

*Paul Mancino, Jr.,* for appellant.

TERRENCE O'DONNELL, Judge.

■ Donnel Washington appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of twenty-six drug-related charges. On appeal, Washington raises eighteen assignments of error, including his claim that the trial court violated his right to a public trial when it closed the courtroom during the testimony of a state informant. Upon review of the record and applicable law, we have concluded that the trial court violated Washington's Sixth Amendment right to a public trial and abused its discretion when it ordered closure of its courtroom for this testimony without making findings adequate to support the closure. Accordingly, we reverse Washington's conviction and remand this case for a new trial.

On November 30, 1999, in case number CR–384060, the grand jury indicted Washington on the following counts: trafficking in cocaine, with schoolyard and juvenile specifications (count 1); preparation of drugs for sale, with schoolyard and juvenile specifications (count 2); possession of drugs (counts 3, 6 and 7); trafficking in cocaine, with a schoolyard specification (count 4); preparation of drugs for sale, with a schoolyard specification (count 5); and possessing criminal tools (count 8).

Thereafter, on March 6, 2000, in case No. CR–388092, the grand jury again indicted Washington, this time charging him with possession of drugs (counts 1, 2, 3, 4, 5 and 6); trafficking in cocaine, with juvenile specifications (counts 7 and 11); trafficking in cocaine (counts 8 and 9); trafficking in cocaine, with a schoolyard

specification (count 10); preparation of drugs for sale, with juvenile specifications (counts 12 and 16); preparation of drugs for sale (counts 13 and 14); preparation of drugs for sale, with a schoolyard specification (count 15); and possessing criminal tools (counts 17 and 18).

The trial court consolidated both cases and began trial on March 21, 2000. The state called as its first witness Dwayne Brandon, a confidential informant; however, prior to his testimony, the state requested that the court close the courtroom during his testimony. The following exchange took place:

"MR. PHILLIPS: Your Honor, in addition the State ask [sic] the courtroom to be sealed, closed for this proceeding. The State is concerned although we are revealing the identity of this witness, that there [sic] be repercussions of [sic] this witness once he is known. We really have no problem with the Court watchers, but the defendant's mother is in the courtroom and we ask the courtroom be closed for this witness' testimony.

"THE COURT: Mr. Sims?

"MR. SIMS: His mother can remain. She's not being called as a witness.

"MR. PHILLIPS: No. I'm asking that all parties, no one be allowed to be in the courtroom, including the mother.

"THE COURT: Rather be safe than sorry, with all due respect to the court watchers, therefore, so I'm not applying different rules to you as the defendant's mother, I will clear the courtroom, other than the parties and the deputies for purposes of this testimony.

"MR. SIMS: Judge, I have to object to that. I don't see any reason why my client's mother has to leave the courtroom. We have all the information regarding the CRI. I don't see why—

"THE COURT: Your objection is so noted for the record, but I'm going to have everyone leave, and I apologize to all parties. I just rather would be safe than sorry. If the request is being made, I'll honor it."

The trial continued, and after deliberation, the jury returned a verdict finding Washington guilty of all twenty-six counts. In case No. CR–384060, the trial court sentenced Washington to an aggregate prison term of nineteen years and eight months, to be served consecutively with the nine-year, ten-month sentence imposed in case No. CR–388092. Therefrom, Washington filed a timely notice of appeal with this court.

"I. Defendant was denied his constitutional right to a public trial when the court excluded the public from the courtroom during the testimony of the informant."

In the first assignment of error, Washington asserts that the trial court deprived him of his Sixth Amendment right to a public trial by closing the courtroom during the testimony of the state's confidential informant. The state maintains that the trial court properly exercised its discretion in this regard because the safety of the confidential informant constituted an overriding interest.

■ The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of the accused to a public trial. This protection is also contained in the Ohio Constitution, Section 10, Article I. However, the right to a public trial is not absolute and may in very limited circumstances yield to overriding interests. See *United State v. DeLuca* (C.A.1, 1998), 137 F.3d 24, 33, citing *Waller v. Georgia* (1984), 467 U.S. 39, 45, 104 S.Ct. 2210, 2214–2215, 81 L.Ed.2d 31, 37–38.

In *Waller*, the United States Supreme Court set forth the following four-prong test which courts must use to determine whether closure of the courtroom is necessary:

"(1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure." *Id.*, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39.

■ Open trials are strongly favored and, in order to justify closure, a trial court must "require persuasive evidence of serious risk to an important interest." *Bowden v. Keane* (C.A.2, 2001), 237 F.3d 125, 129 (emphasis added), quoting *Ayala v. Speckard* (C.A.2, 1997), 131 F.3d 62, 70 (*Ayala III*). "The mere possibility of prejudice, however, even when such important interests are at stake, is not tantamount to a substantial probability of likely prejudice and cannot justify abridging * * * [the defendant's] constitutional protections in the case at hand." *Ayala v. Speckard* (C.A.2, 1996), 89 F.3d 91, 95 (*Ayala I*). As the Second Circuit Court of Appeals stated in *Ayala I*:

"The first prong of the *Waller* test requires that before a courtroom be closed to the public, the party seeking the closure must present evidence of an 'overriding interest that is likely to be prejudiced.' *Id.* Such a closure may not, however, be predicated upon the mere possibility that an interest will be prejudiced, see *United States v. Doe*, 63 F.3d 121, 130 (2d Cir.1995); rather, the Supreme Court has made clear that there must be a 'substantial probability' that the interest in question will be prejudiced by open testimony, see *Press–Enterprise Co. v. Superior Court [of California]*, 478 U.S. 1, 14, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("*Press–Enterprise II*"). Moreover, the burden is upon the

party seeking closure to establish the existence of a substantial probability of prejudice. See *Doe,* 63 F.3d at 130." (Emphasis added.) *Id.* at 94.

Here, the state urges that it requested closure of the courtroom during the testimony of the informant to protect his safety. Federal courts have held that the state has an overriding interest in protecting the safety of its witnesses and that this interest may, in limited circumstances, justify the closure of a court-room. See, e.g., *Pearson v. James* (C.A.2, 1997), 105 F.3d 828, 830 ("the prosecution adequately supported an overriding interest in protecting the under-cover officer from exposure of her identity"); *Ayala I,* at 95 ("it is undisputed that the State has an overriding interest in protecting the safety, as well as the confidentiality, of its undercover officers"). In this case, during his testimony, the state's informant disclosed his identity and place of employment, making this information a matter of public record. The record before us does not contain evidence to establish the substantial probability that the informant's public testimony would create further prejudice to his safety.

Prior to calling the informant to the stand, the prosecutor expressed concerns about repercussions from the public testimony of this witness. The prosecutor, however, failed to allege a substantial probability that an overriding interest would have been prejudiced by this open testimony. Moreover, the prosecutor's short allocution failed to rise to the level of persuasive evidence in this regard.

■ Further, the state mainly sought to exclude Washington's mother from the courtroom, stating: "We really have no problem with the Court watchers, but the defendant's mother is in the courtroom and we ask the courtroom be closed for this witness' testimony." The state bears a heavy burden when seeking to exclude relatives of a defendant from trial. See *Vidal v. Williams* (C.A.2, 1994) 31 F.3d 67 (the trial court committed reversible error when it excluded the defendant's parents). See, also, *Brown v. Kuhlmann* (C.A.2, 1998), 142 F.3d 529, 538 ("the Supreme Court has demonstrated a 'special concern for assuring the attendance of family members of the accused' "), quoting *Vidal,* 31 F.3d at 69, citing *In re Oliver* (1948), 333 U.S. 257, 271–272, 68 S.Ct. 499, 506–507, 92 L.Ed. 682, 693–694, and fn. 29.

Finally, we are confined to the record before us, in which the trial court merely expressed it would "rather be safe than sorry." This expression does not satisfy the fourth prong of the *Waller* test, which requires the trial court to make findings adequate to support its closure order. Not only did the state fail to present sufficient evidence to the court in this regard, but the court failed to make any finding on the record to adequately support closure.

Our analysis here follows *State v. Brown* (Nov. 25, 1998), Cuyahoga App. No. 73060, unreported, 1998 WL 827566, where the trial court closed the courtroom to spectators during the testimony of the state's confidential informant. On appeal, we determined that "there is no independent factual basis in the record from which we may determine whether there was an 'overriding interest' for the order of partial closure." Therefore, we overturned Brown's conviction and remanded that case for a new trial.

■ Regrettably, we are constrained to reverse this case, notwithstanding the overwhelming evidence of Washington's guilt. "The violation of the constitutional right to a public trial is a structural error, not subject to harmless error analysis." *Bell v. Jarvis* (C.A.4, 2000), 236 F.3d 149, 165, citing *Neder v. United States* (1999), 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, 46–47 (1999); *Waller, supra,* 467 U.S. at 49–50, 104 S.Ct. at 2216, 81 L.Ed.2d at 40, fn. 9.

Based upon the foregoing, we conclude that the trial court abused its discretion when it ordered the closure of the courtroom during the informant's testimony. Upon retrial, if the trial court chooses to again close the courtroom during the informant's testimony, it may do so, provided it makes adequate findings supported by evidence contained in the record. Accordingly, we sustain Washington's first assignment of error, reverse his conviction, and remand this case for a new trial. Our disposition of Washington's first assignment of error renders the remaining assignments moot, and, pursuant to App.R. 12(A)(1)(c), we decline to address them.

*Judgment reversed*
*and cause remanded.*

BLACKMON, P.J., and JAMES D. SWEENEY, J., concur.