Andrew SMILLIE, James Daughtry, and Ivan Rennie, Petitioners–Appellants,

v.

Charles GREINER, Superintendent, Sing Sing Correctional Facility; David L. Miller, Superintendent, Eastern Correctional Facility; and Christopher Artuz, Superintendent, Green Haven Correctional Facility, Respondents–Appellees.

No. 01–2778(L), 02–2023(CON), 02–2225(CON).

United States Court of Appeals, Second Circuit.

May 25, 2004.

Mitchell J. Briskey, Legal Aid Society, Criminal Appeals Bureau, Brooklyn, NY, for Appellants.

Thomas M. Ross, Assistant District Attorney for Kings County (Charles J. Hynes, District Attorney, Leonard Joblove, Jane S. Meyers, Assistants District Attorney, on the brief), Brooklyn, NY, for Appellees.

PRESENT: WALKER, Chief Judge, POOLER, Circuit Judge, and GLEESON, District Judge.*

## AMENDED SUMMARY ORDER

Petitioners Andrew Smillie, James Daughtry, and Ivan Rennie, co-defendants at trial, who are currently serving sentences for convictions of various crimes, appeal the denial of their joint habeas petitions under 28 U.S.C. § 2254 by the District Court of the Eastern District of New York (Raggi, *J.*). The district court granted a Certificate of Appealability on two of petitioners' claims: one alleging a violation of their Sixth Amendment right to a public trial because the state court ordered the court fully closed during the testimony of an informant and an undercover police officer; and another alleging a violation of the requirements of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), claiming that the prosecution exercised peremptory challenges in a racially discriminatory manner. We re-

---

* The Honorable John Gleeson, of the United States District Court for the Eastern District of New York, sitting by designation.

view the district court's denial of a petition for a writ of habeas corpus *de novo.* *See Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997). In doing so here, we conclude that the district court properly held that the state court's decisions were not contrary to or unreasonable applications of federal law as established by the United States Supreme Court, and affirm the judgment of the district court.

## DISCUSSION

### I. *The Closure Claim*

With regard to the closure issue, we very recently clarified this area of law in two published opinions addressing a defendant's right to a public trial. *See Yung v. Walker,* 341 F.3d 104, 110–11 (2d Cir. 2003); *Sevencan v. Herbert,* 342 F.3d 69, 74 (2d Cir.2003). Because these decisions control the merits of petitioners' claims, there is no need to address whether the claims have been waived or procedurally barred.

At issue are two separate decisions the state court made after required hearings, pursuant to *People v. Hinton,* 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), to determine the propriety and scope of the proposed courtroom closure. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may overturn a state court adjudication only if it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "We must presume the state court's factual findings to be correct and may overturn those findings only if petitioner[s] offer[] clear and convincing evidence of their incorrectness." *Yung,* 341 F.3d at 109 (citing 28 U.S.C. § 2254(e)). In *Yung,* we clarified that application of our pre-AEDPA decision in *Vidal v.*

*Williams,* 31 F.3d 67 (2d Cir.1994), which adopted a specialized standard for the exclusion of family members in this circuit, cannot be reconciled with the Supreme Court's holding in *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), that under AEDPA only Supreme Court precedent is relevant to the inquiry at hand. *See Yung,* 341 F.3d at 110; *Sevencan,* 342 F.3d at 74–75. Therefore, *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), not *Vidal,* provides the guiding test. *Yung,* 341 F.3d at 111. Because both state court decisions conformed to *Waller,* neither exclusion violated appellants' right to a public trial.

In *Waller,* the Supreme Court held that before public access to a courtroom in a criminal case may be restricted, "[ (1) ] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [ (2) ] the closure must be no broader than necessary to protect that interest, [ (3) ] the trial court must consider reasonable alternatives to closing the proceeding, and [ (4) ] [the court] must make findings adequate to support the closure." 467 U.S. at 48, 104 S.Ct. 2210. *Yung* requires us to apply the "more general teachings of *Waller*" even when reviewing the exclusion of family members. *Yung,* 341 F.3d at 111.

 The trial court's decision to exclude everyone from the courtroom during the testimony of a confidential informant ("CI") comported with *Waller'*s parameters and was not "unreasonable" in its application: (1) The prosecutor advanced an "overriding interest" that was "likely to be prejudiced" by a public hearing-the safety of the CI. (2) The closure was "no broader than necessary to protect that interest," as it occurred solely during the CI's and an undercover officer's testimony. *See Sevencan,* 342 F.3d at 76.(3) The trial

court satisfied its obligation to consider reasonable alternatives; in any event, where "[n]o additional alternatives [a]re suggested by any party, ... trial judges ha[ve] no obligation to consider additional alternatives *sua sponte.*" *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir.1997) (*in banc*). And, (4) the court made an explicit finding about the threats on the CI's life and family.

■ The second closure—this time for an undercover police officer's ("UC–1028") testimony—also comported with *Waller*. (1) The prosecutor advanced an "overriding interest" that was "likely to be prejudiced" by a public hearing—protecting both the life and usefulness of UC–1028. (2) The closure was also "no broader than necessary to protect that interest," as it occurred solely during the CI's and UC–1028's testimony. *See Sevencan*, 342 F.3d at 76. Moreover, transcripts of the testimony were available to the public, and the trial court did not seal the courtroom for other law enforcement officer testimony, indicating the exercise of discretion in closure. *See Ayala*, 131 F.3d at 69–72.(3) The trial court considered reasonable alternatives; in any event, no alternatives were offered by the parties and the trial court need not have considered any *sua sponte. See id.* at 72. Finally, because the court made an explicit finding about the safety of UC–1028's life and family, prong (4) is satisfied on the record before us.

In sum, neither of these state court closures resulted from unreasonable applications of *Waller* or from "unreasonable determination[s] of the facts in light of the evidence presented in the State court proceeding," as would be required for reversal under AEPDA. 28 U.S.C. 2254(d). Moreover, we presume that the state court's factual determinations (made under *Waller*'s fourth prong) are correct; that pre-

sumption was not rebutted by any clear and convincing evidence pursuant to 28 U.S.C. § 2254(e)(1).

■ Although *Waller* plainly provides no relief on appellants' general closure claim, appellants further assert that the exclusion of their families required a special standard and a specialized finding by the trial court. However, *Yung* and *Sevencan* hold that *Waller*, rather than cases from this circuit, supplies the standard by which all courtroom closures are to be judged. Because *Waller* requires that a closure be no broader—as to either duration of the closing or the portion of the public excluded—than necessary to serve the overriding interest at stake, it would be an unreasonable interpretation of *Waller* for a trial court to deny a defendant's request to exempt relatives from a closure order unless the relatives' exclusion was necessary to serve the overriding interest. *Yung*, 341 F.3d at 110–11; *Sevencan*, 342 F.3d at 76. Here, the defendants did not request exemptions for their family members, so the court's failure to exempt them was not an unreasonable interpretation of *Waller. See id.; see also Brown v. Kuhlmann*, 142 F.3d 529, 538 (2d Cir.1998) (holding that when a defendant does not ask the court to permit family members to remain, he "cannot argue that their exclusion renders the closure overbroad"). Accordingly, we affirm the district court's denial of appellants' habeas petitions.

## II. *The* Batson *Claim*

■ We next address appellants' claim that the prosecution violated *Batson* by exercising its peremptory challenges in a racially discriminatory manner. Again, we let pass the possibility that the claim is procedurally barred as to any petitioner because the claim plainly lacks merit. The defense objected to the prosecution's challenges after the second and fourth (of five)

rounds of jury selection from a venire that was 68% minority-composed based on what they thought was a *prima facie* showing of statistical discrimination. We agree with the district court that there was no *Batson* violation and affirm its judgment.

After the second round of jury selection, six of the seven jurors seated were black; after the fourth, nine of the eleven seated were black. Given that the final proportion of seated jurors well exceeded the proportion of minority jurors in the venire, a *prima facie* claim of discrimination is undermined. *United States v. Diaz,* 176 F.3d 52, 77 (2d Cir.1999). "Only a rate of minority challenges significantly higher than the minority percentage of the venire would support a statistical inference of discrimination." *United States v. Alvarado,* 923 F.2d 253, 255 (2d Cir.1991). And that was not the case here. Under a "multi-factor analysis," *Tankleff v. Senkowski,* 135 F.3d 235, 249 (2d Cir.1998), and according "broad latitude" to the trial judge in determining whether a *prima facie* case was made, *Diaz,* 176 F.3d at 76 (internal quotation marks omitted), we find that the state court made no erroneous application of *Batson,* nor did it act contrary to any federal law, as established by the Supreme Court.

We have carefully considered all of appellants' arguments and find them to be without merit.

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.