■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MILTON NIEVES, Appellant. [648 NYS2d 583] —Judgment, Supreme Court, New York County (Patricia Williams, J.), rendered September 22, 1992, convicting defendant, after jury trial, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony offender, to concurrent indeterminate terms of imprisonment of from 5 to 10 years, unanimously affirmed.

Defendant was arrested for the sale of two glassine envelopes of heroin to an undercover detective for the sum of $26. On appeal, defendant contends that he was denied his Sixth Amendment right to a public trial because the Trial Justice closed the courtroom to the public while the undercover officer was on the witness stand. Specifically, he complains that there was no justification for barring his wife and children from the courtroom during the officer's testimony because it was not demonstrated that they posed any threat to the undercover officer's safety.

The limited closure of the courtroom was warranted by the State's substantial interest in maintaining the capability to conduct effective law enforcement operations by protecting the physical welfare of the undercover officer and by preserving his usefulness as an operative in future undercover operations (*United States v Lucas*, 932 F2d 1210, 1217; *United States ex rel. Lloyd v Vincent*, 520 F2d 1272, *cert denied* 423 US 937; *People v Hinton*, 31 NY2d 71, 75, *cert denied* 410 US 911). Justification for closure was provided by the officer's testimony

that he continues to make narcotics purchases three to four times a week in the area of defendant's arrest (*People v Reed*, 215 AD2d 209, 210, *lv denied* 86 NY2d 801). As defendant was arrested 12 blocks away from his residence, this constitutes a valid basis for the exclusion of defendant's family (*cf., People v Gutierez*, 86 NY2d 817). It could hardly be considered prudent to permit the extensive viewing of a detective who is actively engaged in undercover operations in the very neighborhood where the observers reside (*see, People v Martinez*, 82 NY2d 436, 443; *cf., Vidal v Williams*, 31 F3d 67, 69 [2d Cir 1994], *cert denied* 513 US 1102). Additionally, the undercover detective identified by name another undercover officer, who had been shot and killed some three years earlier in the same vicinity. Finally, a court officer observed defendant's wife talking with one or more jurors. Supreme Court appropriately concluded that, at a minimum, she had demonstrated both a lack of good judgment and a willingness to disobey judicial directives.

This Court is mindful of the decision of the United States Court of Appeals for the Second Circuit in *Ayala v Speckard* (89 F3d 91 [1996]), in which the Court abandoned its position in *United States ex rel. Lloyd v Vincent* (*supra*) in favor of a "substantial probability test", based upon its interpretation of the United States Supreme Court's decision in *Waller v Georgia* (467 US 39). In *Ayala v Speckard* (*supra*), the Circuit Court reversed the decision of the United States District Court for the Southern District of New York and remanded the matter for issuance of a writ of habeas corpus, thus overturning our decision in *People v Ayala* (202 AD2d 262, *lv denied* 83 NY2d 908). The Circuit Court found it unavailing that the officer had resumed undercover operations in the area where the underlying crime took place, purchased narcotics in the same building during the week before his testimony and in the immediate vicinity of the defendant's arrest on some 20 occasions during the year, and stated that ex-defendants had attempted to identify him to others as a police officer (*Ayala v Speckard, supra*, at 93). The court held (at 95) that "the State failed to establish a substantial probability that anyone observing [the undercover officer's] testimony in open court would threaten his safety or cover should he return to the field in general or even the exact location at which Ayala was arrested." The court noted that the officer had not stated a "particularized fear", but "expressly stated that he sought courtroom closure as a matter of course whenever he testified" (at 95). The court concluded, "The state may not subjugate Ayala's constitutional protections to the mere possibility that someone with the abil-

ity and inclination to injure [the undercover officer] will be present in the courtroom during his brief testimony" (at 95).

The circumstances presented by the matter before this Court, however, fall squarely within an exception enunciated by the Second Circuit Court of Appeals in *Ayala (supra)*. Having acknowledged the value of undercover work to law enforcement and the extreme importance of the State's interest in the anonymity and safety of undercover officers (*Ayala v Speckard, supra*, at 96), the Circuit Court expressed its view of a situation that warrants a reasonable inference that these interests will be substantially prejudiced, thus, justifying closure: "Had [the officer] suggested that [defendant's] associates or other residents of the neighborhoods in which [the officer] performed undercover work were likely to be present in the courtroom during his testimony, we would have no difficulty inferring a substantial probability of likely prejudice."

It is not contested that defendant's wife and children, whose exclusion defendant now specifically contends infringed upon his Sixth Amendment right to a public trial, reside in the very neighborhood in which the detective testified that he routinely performs undercover work. In this connection, we note that defendant's protest against the exclusion of his children from the courtroom is unpreserved and we decline to review it in the interest of justice. However, were we to reach the issue, we would find it devoid of merit in view of the express finding of the Trial Justice that the children could not be expected to appreciate the nature of a confidence and, therefore, "may disclose facts without malice". Additionally, Supreme Court credited the evidence that defendant's wife had engaged in conversation with one or more members of the jury, appropriately concluding that she had displayed poor judgment and demonstrated disregard for judicial directives. Finally, the undercover officer's testimony with respect to the killing of another undercover officer in the same vicinity three years earlier lends substance to the concern expressed by the witness for his personal safety. Thus, the limited closure of the courtroom in this case lies well within the ambit of the exception noted in dictum in *Ayala (supra)*.

As to the scope of the closure directed in this matter, defendant voiced only a general objection to the exclusion of his wife, never claimed that closure was impermissibly broad and suggested no alternative to closure of the courtroom during the undercover officer's testimony. Therefore, on the record before us, it cannot be said that the Trial Justice erred in failing to consider alternative measures, as defendant now suggests

(*People v Martinez,* 82 NY2d 436, 444, *supra; People v Bouche,* 208 AD2d 445, *lv denied* 84 NY2d 1009; *cf., People v Kin Kan,* 78 NY2d 54, 59).

As jury selection in this case took place some two months before the Court of Appeals' decision in *People v Antommarchi* (80 NY2d 247), defendant's claim concerning his absence at sidebar conferences with prospective jurors is without merit (*People v Camacho,* 209 AD2d 166, *lv denied* 84 NY2d 1029). In any event, were we to entertain the issue, we would reject the claim since all three of the prospective jurors were excused by the court for cause (*People v Feliciano,* 88 NY2d 18, 28). Concur—Sullivan, J. P., Milonas, Rubin, Williams and Mazzarelli, JJ.