**Hoi Man YUNG, Petitioner–Appellee,**

v.

**Hans WALKER, Superintendent, Auburn Correctional Facility, and Eliot L. Spitzer, New York State Attorney General, Respondents–Appellants,**

**Docket No. 01–2299.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 6, 2002.

Decided: June 27, 2002.

Amended: Aug. 1, 2003.

Jeffrey I. Richman, The Legal Aid Society–Criminal Appeals Bureau, New York, NY (Andrew C. Fine, on the brief,) for Petitioner–Appellee.

Melanie L. Oxhorn, Assistant Solicitor General (Eliot Spitzer, Attorney General of the State of New York, Preeta D. Bansal, Solicitor General, Robin Forshaw, Assistant Solicitor General, on the brief), New York, NY, for Respondents–Appellants.

Before: POOLER and SOTOMAYOR, Circuit Judges, KAPLAN, District Judge.*

POOLER, Circuit Judge.

New York State Attorney General Eliot L. Spitzer and Auburn Correctional Facility Superintendent Hans Walker (collectively, the "State") appeal from a judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*) granting petitioner Hoi Man Yung a conditional writ of habeas corpus. Because Yung filed his petition, which contested the closure of his trial to relatives during the testimony of an undercover officer, after the effective date of the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), the district court could grant the writ only if it concluded that the closure was contrary to or an unreasonable application of federal law clearly established by the Supreme Court. The district court conducted its reasonableness analysis using a line of Second Circuit authority interpreting Supreme Court cases. In an opinion filed on June 27, 2002, we vacated and remanded for analysis of the reasonableness of the closure under the relevant Supreme Court cases: *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), and *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The mandate issued on August 28, 2002. After issuance of the mandate, the district court granted the writ, directing respondent to release Yung unless it retried him within a reasonable period of time. *See Yung v. Walker,* 2002 WL 31778816 (S.D.N.Y.2002). Respondent has appealed the granting of the writ.

We issue this amended version with slightly changed language because of some disagreement within our circuit regarding the standard for analyzing under AEDPA, a *Waller* Sixth Amendment claim pertaining to the exclusion of relatives from the courtroom. Because the disposition has not changed, we do not recall the mandate. We note that an amended opinion will also issue in *Sevencan v. Herbert,* 316 F.3d 76 (2d Cir.2002), originally filed on December 30, 2002, which too addresses courtroom closure and AEDPA standards. No mandate has been issued in that case.

## BACKGROUND

Yung currently is serving a fifty-year to life sentence in New York's Auburn Correctional Facility. His sentence results from his conviction, after a jury trial, of two counts of criminal sale of a controlled substance in the first degree, nine counts of criminal sale of a firearm in the third degree, five counts of criminal possession of a weapon in the third degree, and three counts of criminal sale of a controlled substance in the third degree.

An undercover police officer who provided crucial evidence of Yung's guilt testified for almost two of the four days of trial. Before the undercover officer began his testimony, the People requested closure of the courtroom. New York State Supreme Court Justice Ronald Zweibel conducted a hearing pursuant to *People v. Hinton,* 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), to determine the propriety and scope of closure.

* The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

During the *Hinton* hearing, the undercover officer testified that in recent years he had testified only in closed courtrooms. He indicated that he feared for his safety if the courtroom were not closed during his testimony and that he had been threatened by individuals "associated with" Yung. The undercover officer used "associated with" as a synonym for "know[ing] each other." The last threat occurred approximately nine months prior to trial and was not related to Yung's trial. The individual who made the threat was on trial in an unrelated matter.

The officer had two pending undercover investigations involving subjects who had not been arrested on the lower east side of Manhattan. He intended to go back to the lower east side, where Yung also committed his crimes, to further his investigations.

Defense counsel asked the undercover officer if he was afraid of any member of Yung's family other than Yung's brother, David, who had been arrested in the same case but whose charges had been dismissed. The undercover officer responded that he could not answer the question but that he had fears concerning "[a]nyone who is involved in the current investigations, anyone who is affiliated with the individual who knows your client."

During argument at the close of the hearing, defense counsel asked the court to exempt Yung's mother, Ha Chung Yuk; the mother of Yung's child, Beverly Soto; and Yung's sister-in-law, Theresa Soto, from any closure order. The prosecution objected, reminding the court that Yung and his brother had been affiliated with violent criminal organizations and that when Yung's apartment was searched incident to a prior arrest, officers found holsters and bullet proof vests. The prosecutor argued that "[i]t is speculation to suggest that the defendant's family mem-bers will come in here and not report to the defendant's brother David Yung or to any of the other people with whom this defendant is associated who the undercover is, describe him and things of that nature." The court noted that the three women were connected at least to David Yung, who had participated in the same criminal activities as Yung, and who was not incarcerated. It then closed the courtroom to everyone including family members except defense counsel's associates and partners. The court found:

> I am closing the courtroom because this is an undercover police officer who is currently working in an undercover capacity. He is working in the same general area in his undercover capacity, namely the Lower East Side. He has open and pending cases with unapprehended suspects. He has been threatened in the past, I find that, by people connected with the defendant. To allow family members into the courtroom can jeopardize the safety, the life safety and security of this officer by making it easier for those who the defendant is associated with on the outside to identify him, thereby placing him in great risk for his life.

Yung later testified that he, Beverly Soto, and their child lived in an apartment with Yung's parents and his brother. Yung admitted that he gave approximately $3000 from his criminal activities to his family.

Yung appealed his subsequent conviction and sentence to the New York State Appellate Division, First Department, arguing principally that closing the courtroom to his family violated his Sixth Amendment and New York law right to a public trial. The Appellate Division affirmed, finding with regard to the courtroom closure that

> [t]he court properly closed the courtroom to defendant's family during the

testimony of an undercover officer, based on the officer's testimony at a *Hinton* hearing establishing particularized reasons for concern that defendant's relatives posed a threat to his safety by revealing his identity (*see, People v. Nieves,* 232 A.D.2d 305, 648 N.Y.S.2d 583, *lv granted* 89 N.Y.2d 987, 656 N.Y.S.2d 746, 678 N.E.2d 1362; *People v. Abdul–Aziz,* 216 A.D.2d 77, 628 N.Y.S.2d 272, *lv denied* 86 N.Y.2d 788, 632 N.Y.S.2d 502, 656 N.E.2d 601).

*People v. Hoi Man Yung,* 240 A.D.2d 252, 659 N.Y.S.2d 733, 733 (1st Dep't 1997) (*"Yung I "*). On September 24, 1997, Judge Titone of the New York Court of Appeals denied Yung leave to appeal. *People v. Hoi Man Yung,* 90 N.Y.2d 940, 664 N.Y.S.2d 758, 687 N.E.2d 655 (1997). Judge Titone also denied Yung's subsequent request for reconsideration. 90 N.Y.2d 1012, 666 N.Y.S.2d 107, 688 N.E.2d 1390 (1997).

In addition to his direct appeal, Yung filed a pro se motion to vacate the judgment pursuant to New York's Criminal Procedure Law § 440.10. Justice Zweibel denied this motion on May 19, 1999.

On February 18, 2000, Yung filed the petition that is the basis of this appeal. In support of his petition, Yung claimed that the closure of the courtroom to his family members denied him the right to a public trial.

After briefing and argument, Judge Sweet granted the petition. The judge held that he must presume the correctness of the state court's factual findings and that he could not grant relief unless the state court decision (1) contradicted federal law that had been clearly established by the Supreme Court, (2) constituted an unreasonable application of Supreme Court precedent, or (3) rested on factual findings that were unreasonable in light of the evidence the state court heard. *Yung v.*

*Walker,* 143 F.Supp.2d 262, 268 (S.D.N.Y. 2001) (citing 28 U.S.C. § 2254(d)(1),(2), (e)(1)) (*"Yung II "*).

Judge Sweet found that all criminal defendants have a fundamental right to a public trial, but that this right "is not absolute, and may be qualified by a showing of sufficiently important countervailing interests." *Id.* at 269 (citing *Waller v. Georgia,* 467 U.S. 39, 45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)). He also noted, citing *In re Oliver,* 333 U.S. 257, 271–72, 68 S.Ct. 499, 92 L.Ed. 682 (1948), that a defendant has a more substantial right to his family's presence at trial than to the presence of the general public. *Id.*

The district court next set forth three general principles drawn from this circuit's application of the *Waller* balancing test. First, "the more extensive the closure requested, the greater must be the gravity of the required interest and the likelihood of risk to that interest." *Id.* (quoting *Ayala v. Speckard,* 131 F.3d 62, 70 (2d Cir.1997)). Second, in determining "[t]he extent of the closure," the court must weigh "its duration, the importance of testimony taken while the courtroom was closed, the relationship of the excluded persons to the accused, the public's right of access to the proceedings, and the availability of transcripts or some other mechanism by which to report the testimony" *Id.* (citing *English v. Artuz,* 164 F.3d 105, 108 (2d Cir. 1998)). Third, although the court ordinarily may justify a partial closure based on a substantial reason and need not find an overriding interest, *id.* (citing *Guzman v. Scully,* 80 F.3d 772, 775 (2d Cir.1996)), a more rigorous standard applies to family members, *id.* (citing *Vidal v. Williams,* 31 F.3d 67, 69 (2d Cir.1994)).

Finally, the district court examined the record of the *Hinton* hearing to determine whether the state court complied with

*Waller*, which allows a court to close a hearing only if

> the party seeking to close the hearing...advance[s] an overriding interest that is likely to be prejudiced, the closure [is] no broader than necessary to protect that interest, the trial court ... consider[s] reasonable alternatives to closing the proceeding, and it...make[s] findings adequate to support the closure.

*Waller*, 467 U.S. at 48, 104 S.Ct. 2210. The court found that the People advanced two overriding interests for closing the courtroom during the undercover officer's testimony: the officer's safety and his continued effectiveness. *Yung II*, 143 F.Supp.2d at 270 (citing *Ayala*, 131 F.3d at 72). The court also rejected Yung's contention that the state court impermissibly ignored alternatives to a total closure. *Id.* at 272.

However, Judge Sweet held both that the state court did not make findings sufficient to close the undercover officer's testimony to Yung's family and that the closure was overly broad. *Id.* at 271–73. Both these holdings rest on the judge's conclusion that in order to justify exclusion of family members, the proponent of closure must offer evidence that there is some likelihood that the family will encounter the undercover officer in the performance of his duties and that the family members are inclined to harm the officer. *Id.* at 271 (citing *Vidal*, 31 F.3d at 69).

Having found an improper courtroom closure, the district court granted the writ, remanding the case to the state court "with instructions to release Yung unless he is retried within a reasonable time." *Id.* at 273.

The State filed a timely appeal. Its principal arguments are (1) the district court failed to accord a presumption of correctness to the state court's finding that Yung's relatives presented a danger to the undercover officer and (2) the court wrongly assumed it lacked discretion to allow the State to supplement the evidence necessitating closure in a supplementary hearing in district court or on remand to the state court.

## DISCUSSION

### I. Standard of Review.

 We review the grant of a habeas corpus petition de novo. *Brown v. Artuz*, 283 F.3d 492, 497 (2d Cir.2002). Because Yung filed his petition after AEDPA's effective date, we, like the district court, must give the state court's adjudication a high degree of deference. *Id.* We must presume the state court's factual findings to be correct and may overturn those findings only if petitioner offers clear and convincing evidence of their incorrectness. 28 U.S.C. § 2254(e). We may overturn a state court adjudication only if it

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Clearly established Federal law" includes only holdings of Supreme Court decisions and does not include dicta. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision is contrary to clearly established Federal law if it "contradicts the governing law" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court. *Id.* at 405–06, 120 S.Ct. 1495. An unreasonable application of federal law is

more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable. *Id.* at 409–12, 120 S.Ct. 1495. Instead, a federal court should review a state court's interpretation of federal law using a standard of objective reasonableness. *Id.* at 409, 120 S.Ct. 1495. The "increment of incorrectness beyond error...need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

■ A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent. *Mask v. McGinnis,* 252 F.3d 85, 90 (2d Cir.2001).

## II. Propriety of the state court's closure in light of Supreme Court precedent.

We start with an issue only tangentially presented by the parties' briefs but one that causes us significant difficulty in addressing the correctness of the district court's ultimate holding. The district court found closure to be unjustified only because there was no evidence that Yung's family members were likely to encounter the undercover officer or that they were inclined to harm him. We first considered these two factors in *Vidal v. Williams,* 31 F.3d 67 (2d Cir.1994), holding that because the prosecution offered no evidence that the defendant's parents were inclined to harm or even likely to encounter the undercover officer, the state court erred by excluding the parents from the courtroom. 31 F.3d at 69. We decided *Vidal* before AEDPA was enacted and therefore could grant the writ based solely on our own interpretation of *Waller* and *Oliver.* We

had no occasion to consider whether a state court's belief that Supreme Court precedent imposed a lesser or different burden would be unreasonable. Post–AEDPA, we-and the district court-must answer this question with respect to Yung.

The Supreme Court rarely has spoken on courtroom closure as a violation of the right to a public trial. In 1948, the Court decided *In re Oliver.* In that case, the Supreme Court reversed a contempt conviction imposed by a judge in a proceeding closed to everyone except perhaps a prosecutor and a court reporter. *In re Oliver,* 333 U.S. at 259, 68 S.Ct. 499. The court found that this practice violated the defendant's right to a public trial, *id.* at 272–73, 68 S.Ct. 499, after noting in dicta that "without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged," *id.* at 271–72, 68 S.Ct. 499.

Thirty-six years later, the Supreme Court considered closure during a suppression hearing, held that the right to a public trial is not absolute, *Waller,* 467 U.S. at 45, 104 S.Ct. 2210, and established the four-part test applicable to a complete courtroom closure: the prosecution must show an overriding interest likely to be prejudiced by an open courtroom; the closure must be no broader than necessary; the court must consider alternatives to a complete closure; and the court's findings must be adequate to support the closure. *Id.*

■ The Supreme Court never has applied the *Waller* factors in the context of a state court's exclusion of family members. Nevertheless, *Waller*'s second mandate—that the closure be no broader than required to protect the overriding interest at stake—necessarily applies to both the duration of the closure and to the portion of

the public to be excluded. Thus, *Waller* prevents a court from denying a family member's request to be exempted from a courtroom closure order unless the court is convinced that the exclusion of that particular relative is necessary to protect the overriding interest at stake. Indeed, it would be an unreasonable interpretation of *Waller* for a court to deny such a request if the exclusion of that particular relative, under the specific circumstances at issue, is not necessary to promote the overriding interest. We do not assume, however, that the determination of whether exclusion is necessary must be made by applying the standard that we outlined in *Vidal.* It is the district court's implicit assumption that the *Vidal* analysis is the only way to measure the propriety of excluding family members that causes us to remand.

Because we cannot determine with confidence whether the district court would have reached the same result if it had applied the more general teachings of *Waller,* as informed by *Oliver,* rather than the specific language of *Vidal,* we vacate the district court's judgment and remand for a reassessment of the reasonableness of the state court's adjudication in light only of the relevant Supreme Court precedent.

### III. Propriety of the district court's analysis of the state court's factual findings.

The State contends that the district court improperly set aside the state court's factual findings without according them the proper presumption of correctness. 28 U.S.C. § 2254(e)(1). A close examination of the opinion below reveals that, in fact, the district court based its decision on the failure of the state court to make certain, specific findings, rather than on the lack of evidence to support these findings. Applying the fourth *Waller* prong, the district court reasoned that, before Yung's family

could be excluded from the courtroom, the state court was required to make findings with respect to the likelihood of encounter between the undercover officer and the family members in question or the family member's inclination to harm the undercover officer. As the state court had not made such a determination, the district court held that the findings that had been made by the state court were insufficient to support the closure. *Yung II,* 143 F.Supp.2d at 273.

■ The State's confusion is understandable, however. Although the district court ostensibly applied the fourth *Waller* prong, the district court's conclusory citation to 28 U.S.C. § 2254(d)(2), *id.,* as well as the references to a lack of probative evidence, *id.,* are puzzling. For the sake of clarity, we note that the predominantly factual inquiry under § 2254(d)(2) is distinct from the legal question presented by the fourth *Waller* prong. The fourth *Waller* prong turns, not on whether the court's factual findings are supported by sufficient evidence—the focus of § 2254(d)(2)—but on whether the presumptively correct findings are adequate to support the closure.

### IV. Propriety of granting a writ without ordering a *Nieblas* hearing or remanding to state court for a more detailed *Hinton* hearing.

In *Waller,* the Supreme Court did not order a retrial. Instead, it ordered a new suppression hearing. The court said, "[i]f, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest." *Waller,* 467 U.S. at 50, 104 S.Ct. 2210. Therefore, the court ordered a new trial only if a "public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or ·

in some other material change in the positions of the parties." *Id.*

Addressing the same core concern, the prevention of a windfall to a defendant, we held in *Nieblas v. Smith*, 204 F.3d 29, 32 (2d Cir.1999), that the district court considering a habeas petition retains broad discretion "to hear additional evidence on behalf of the state." The *Nieblas* court identified two particular situations that support holding a supplemental hearing in a courtroom closure case: a perfunctory objection to closure by the petitioner or a change in the case law occurring between the state court proceeding and the filing of the habeas petition. *Id.* We also said "where either of the above two reasons or any other similar reason exists, it is particularly appropriate for a habeas court to gather additional evidence—rather than granting the defendant the 'windfall' of a new trial—where the alleged constitutional violation does not affect the fairness of the outcome at trial, as in courtroom closures like this one." *Id.*

 The State contends that the district court failed to realize it had discretion to hold a *Nieblas* hearing and erred by granting a writ rather than ordering a hearing. The district court did not abuse its discretion because the State concedes it did not request a hearing. However, because we remand for another reason, we note that it might be advisable to conduct a supplementary hearing or to remand to the state trial court for such a hearing. After Yung's conviction, New York's Court of Appeals held in *People v. Nieves,* 90 N.Y.2d 426, 660 N.Y.S.2d 858, 861, 683 N.E.2d 764 (1997), that the State must demonstrate "a 'substantial probability' that the officer's safety would be jeopardized by the presence of defendant's wife and children" to justify their exclusion. As we noted in *Nieblas,* the intervening ·case from the Court of Appeals suggests

that the state court's failure to hold a more extensive hearing is excusable. In addition there are several indications in the record that the prosecutor had other evidence to support closure. The prosecutor alleged that Yung had been involved in violent activities. And, based on Yung's subsequent testimony, it is at least possible that his family members were aware of his criminal activities. Therefore, the district court may itself conduct a *Nieblas* hearing or may remand to the state court for a further *Hinton* hearing.

## CONCLUSION

For the reasons we have discussed, we vacate the judgment and remand to the district court to analyze the reasonableness of the courtroom closure pursuant to Supreme Court precedent and, in its discretion, to conduct a *Nieblas* hearing or remand to the state court for a further *Hinton* hearing. Jurisdiction will be restored to this panel upon the district court's filing of its further conclusions of law and, if a hearing is held, findings of fact. *See United States v. Jacobson,* 15 F.3d 19, 22 (2d Cir.1994).