**Michael DePALLO, Petitioner,**

v.

**John BURGE, Superintendent of Auburn Correctional Facility; Eliot Spitzer, New York State Attorney General, Respondents.**

**Nos. 02–CV–3260 (JBW), 03–MISC–0066 (JBW).**

United States District Court,
E.D. New York.

Sept. 24, 2003.

Sally Wasserman, New York City, for Petitioner.

Jonathan Jay Silbermann, Richmond County District Attorney, Staten Island, NY, for Respondents.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

## I. Facts and Procedural History

Petitioner was tried principally for second degree murder. Evidence of his guilt presented at trial was overwhelming, and included: (1) the oral, written and videotaped confessions of petitioner and his co-perpetrators; (2) petitioner's fingerprints inside the victim's residence; and (3) petitioner's blood on the victim's boxer shorts and a mixture of petitioner's and the victim's blood on a window shade in the victim's residence.

Petitioner testified in his own defense. Before petitioner did so, defense counsel informed the court that he had advised petitioner that he should not testify, but that if he testified he should testify truthfully. Defense counsel elicited petitioner's testimony in narrative form.

The following day, defense counsel initiated an *ex parte, in camera* conference with the trial judge, outside of the presence of both the prosecutor and petitioner. At the *ex parte* conference, which was transcribed by a reporter and sealed dur-

ing the pendency of the trial, counsel told the court that petitioner had early in the case told him that he had participated in the homicide and that he intended to testify; that he had told petitioner that he could not participate in any perjury; and that he did not intend to refer to petitioner's testimony in his upcoming summation. The court then stated that he and counsel had consulted *People v. Salquerro,* 107 Misc.2d 155, 433 N.Y.S.2d 711 (1980), and that defense counsel had complied with the suggested manner of proceeding which that case had indicated was proper.

Petitioner was convicted of murder in the second degree (two counts), robbery in the first degree (two counts), burglary in the first degree (two counts), and robbery in the second degree (one count). He was sentenced to 32–1/2 years to life in prison.

On direct appeal he argued, *inter alia,* that his right to be present at a material stage of the criminal proceedings was abridged and that he received ineffective assistance of trial counsel due to counsel's having initiated the *ex parte* conference with the trial judge. His conviction was affirmed on direct appeal by the Appellate Division. Leave to appeal to the New York Court of appeals was granted, but petitioner's conviction was affirmed. No state collateral proceedings were initiated.

In his application for a writ of habeas corpus, petitioner claims that (1) his constitutional right to be present at a material stage of his trial was infringed by his absence from the *ex parte* conference between his lawyer and the trial court; and (2) he received ineffective assistance of counsel because his lawyer revealed his perjury to the trial court and elicited petitioner's testimony in narrative form.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would

be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

■ "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002); *see also Yung v. Walker,* 341 F.3d 104 (2d Cir.2003) (amended opinion) (district court's habeas decision that relied on precedent from the court of appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary,* 340 F.3d 63, 72 (2d Cir.2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, at *4 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. In determining whether a procedural bar is sufficient to preclude habeas review, a federal court must consider as "guideposts" the following:

(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed

the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (quoting *Lee v. Kemna,* 534 U.S. 362, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ When a state court says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, such a claim is not preserved. *See Glenn v. Bartlett,* 98 F.3d 721, 724–25 (2d Cir.1996). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Services,* 235 F.3d 804, 810 (2d Cir. 2000). Where "a state court's ruling does not make clear whether a claim was rejected for procedural or substantive reasons and where the record does not otherwise preclude the possibility that the claim was denied on procedural grounds, AEDPA deference is not given, because we cannot say that the state court's decision was on the merits." *Su v. Filion,* 335 F.3d 119, 126 n. 3 (2d Cir.2003) (citing *Miranda v.*

*Bennett,* 322 F.3d 171, 178 (2d Cir.2003)). This congeries of holdings leaves it an open question whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.*

## V. Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also Wiggins v. Smith,* 539 U.S. ——, ——, 123 S.Ct. 2527, 2529, 156 L.Ed.2d 471 (2003); *United States v. Eyman,* 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes,* 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003).

As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins,* 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt,* 239 F.3d at 201 (same). The court of appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze,* 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for ... counsel's decisions").

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not

required. *Caballero v. Keane,* 42 F.3d 738, 741 (2d Cir.1994). Each significant factual claim in support of an ineffective-assistance allegation premised on appellate counsel's deficient performance must be exhausted. *See Word v. Lord,* No. 00 CIV. 5510, 2002 WL 32145769, at *12 (S.D.N.Y. Mar. 18, 2002) (Magistrate's Report and Recommendation).

### VI. Certificate of Appealability

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. **Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit.** *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The court has taken into account the rule of section 2253(c)(3) of Title 28 of the United States Code that a certificate of appealability "shall indicate which specific issue or issues satisfy the [substantial showing of the denial of a constitutional right] required by paragraph (2)." *See also Shabazz v. Artuz,* 336 F.3d 154, 160 (2d Cir. 2003).

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

### VII. Analysis of Claims

Petitioner's claims were presented to the state courts and are exhausted. They were denied on the merits. Review proceeds under the deferential standards of AEDPA.

### A

■ Petitioner first claims that his constitutional right to be present at a material stage of his trial was infringed by his absence from the *ex parte* conference between his lawyer and the trial court. A criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California,* 422 U.S. 806, 819 n. 5, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, "the right to be present is not absolute: it is triggered only when the defendant's 'presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Cohen v. Senkowski,* 290 F.3d 485, 489 (2d Cir.2002) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 106–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934)).

In the instant case, petitioner's presence at the *ex parte* conference would not in any manner have furthered his ability to defend against the charges he faced at trial. The purpose of the conference was primarily to memorialize counsel's response to petitioner's insistence to testify to apparent perjury. The entirety of the conference was as follows:

THE COURT: This is People against Michael DePallo, which is the case on trial.

This is an ex parte in camera conference in my chambers. Present with me is the defense attorney, Joseph Lamattina, and this has to do with—the prosecutor is not present, nor is the defendant, and this has to do with a record which we will seal concerning a conversation Mr. Lamattina had with his client prior to his client testifying yesterday.

You want to make a statement, Mr. Lamattina?

MR. LAMATTINA: Yes, Judge.

As you are aware, prior to the testimony I informed the Court that, as a

matter of fact, it was pretty early on in the case I informed the Court that the defendant was going to take the witness stand, and that he had previously told me he was involved in this homicide. Although I did not get into details with him, I don't know exactly what his involvement was, but he had stated to me that he was there that night, he had gotten at least that far.

Knowing that, I told the defendant I cannot participate in any kind of perjury, and you really shouldn't perjure yourself. But, he, you know, dealing with him is kind of difficult and he was insistent upon taking the stand. He never told me what he was going to say, but I knew it was not going to be the truth, at least to the extent of him denying participation.

So, as you are aware, I just asked him if he wanted—if he had something to say, and then when he was finished I asked him if he had anything else to say, and that was the extent of my participation.

I also objected to any questions I thought were improper by the District Attorney on his cross-examination.

But, I do not intend to refer to his testimony at all in my summation, although I will attack the credibility of the People's witnesses, and state if the statements he made were true, in effect, certain other things would be present, such as his blood, or the victim's blood on the defendant's clothing.

THE COURT: Just let me just add that we have all been reading People against Salquerro, 103 Miscellaneous 2d, 155, New York County Supreme Court, 1980.

This case was affirmed without opinion by the First Department and leave to appeal was denied by the Court of Appeals.

Mr. Lamattina has complied with the suggested manner of proceeding which Salquerro advocates.

MR. LAMATTINA: Off the record.

THE COURT: Yes.

(Discussion held off the record.)

MR. LAMATTINA: Is this record sealed?

THE COURT: Yes, this record is sealed.

Trial Tr. at 1229–31.

The New York Court of Appeals rejected petitioner's claim concerning his right to be present at this conference:

We ... reject defendant's contention that his right to be present during a material stage of trial was violated by his absence from the *ex parte* communication between the court and his attorney. Although a defendant has a constitutional and statutory right to be present at all material stages of a trial, and at ancillary proceedings when he or she may have something valuable to contribute or when presence would have a substantial effect on a defendant's ability to defend against the charges, this right does not extend to circumstances involving matters of law or procedure that have no potential for meaningful input from a defendant.

The purpose of this ancillary proceeding was simply to place on the record matters which had already occurred regarding defendant's perjury and his attorney's response. The conference memorialized counsel's dilemma for appellate review and possible analysis of counsel's professional ethical obligations. Thus, defendant's presence was not mandated; it had no bearing on his ability to defend against the charges or on the outcome of this jury trial. . . .

In sum, because the subject matter of the *ex parte* communication here was merely procedural, and there was no hearing or other factual inquiry beyond that which had transpired earlier in the proceedings, defendant had no right to be present.

*People v. DePallo,* 96 N.Y.2d 437, 729 N.Y.S.2d 649, 754 N.E.2d 751, 755 (2001) (citations omitted).

The conclusion of the New York Court of Appeals that petitioner's presence was not required and that it could not have contributed in any meaningful way to his defense is reasonable. Petitioner's contention before this court that he could have rebutted counsel's factual statements—that petitioner's testimony was perjurious—is of no relevance because petitioner had already testified. His contention that he was deprived of an opportunity to argue that counsel created a conflict of interest by initiating the *ex parte* conference is meritless; although in situations like the present one there exists some tension between a lawyer's obligations as advocate and as officer of the court, defense counsel in the instant case did not create or labor under a conflict of interest. Because counsel acted ethically and in no way to detriment of his client, it was not constitutionally required that, instead of initiating an *ex parte* meeting with the trial court, he instead seek to remove himself from the case in open court.

For the most part, petitioner's arguments, made through counsel, boil down to the assertion that it was deceitful for counsel to have acted in this manner and that petitioner should have been allowed to be present because petitioner **"would most certainly have had *something* of value to contribute."** Pet'n for a Writ of Habeas Corpus at 10 (boldface and italics in original). This typographical shouting serves only to highlight the fact that petitioner is hardpressed to demonstrate any way in which he was prejudiced by his failure to be invited to the conference between his lawyer and the court. That said, this court is at a loss to understand why petitioner was excluded from the conference in the first place. His presence would not have thwarted the purpose of the meeting. Excluding petitioner could have no benefit besides encouraging him to believe that his lawyer had somehow turned against him. Although it is perfectly reasonable for defense counsel to seek to place on the record—out of open court and out of the hearing of the prosecution—that he is seeking to ethically perform his duties in the dual role of advocate and court officer, there seems to be no compelling reason for doing so outside of the presence of defense counsel's client. "Off the record" *ex parte* communications are inappropriate.

The conclusion of the New York Court of Appeals that there was no violation of petitioner's right to be present at a material stage of the trial is not unreasonable. Habeas corpus relief on this claim is not warranted.

### B

■ Petitioner also claims that he received ineffective assistance of counsel because his lawyer revealed his perjury to the trial court and elicited petitioner's testimony in narrative form. The New York Court of Appeals rejected this claim as well, noting that the "ethical dilemma presented by this case is not new." *DePallo,* 729 N.Y.S.2d 649, 754 N.E.2d at 753. The relevant portion of the Court's decision is as follows:

[A] defendant's right to testify at trial does not include a right to commit perjury (*see, United States v. Dunnigan,* 507 U.S. 87, 96, 113 S.Ct. 1111, 122 L.Ed.2d 445; *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1), and the Sixth Amendment right to the assistance of counsel does not compel counsel to assist or participate in the

presentation of perjured testimony (*see, Nix v. Whiteside,* 475 U.S. 157, 173, 106 S.Ct. 988, 89 L.Ed.2d 123). In light of these limitations, an attorney's duty to zealously represent a client is circumscribed by an "equally solemn duty to comply with the law and standards of professional conduct ... to prevent and disclose frauds upon the court" (*id.,* at 168–169, 106 S.Ct. 988). The United States Supreme Court has noted that counsel must first attempt to persuade the client not to pursue the unlawful course of conduct. If unsuccessful, withdrawal from representation may be an appropriate response, but when confronted with the problem during trial, as here, an "attorney's revelation of his client's perjury to the court is a professionally responsible and acceptable response" (*id.,* at 170, 106 S.Ct. 988).

This approach is consistent with the ethical obligations of attorneys under New York's Code of Professional Responsibility. DR 7–102 (codified at 22 NYCRR 1200.33) expressly prohibits an attorney, under penalty of sanctions, from knowingly using perjured testimony or false evidence (DR 7–102[a][4]); knowingly making a false statement of fact (DR 7–102[a][5]); participating in the creation or preservation of evidence when the attorney knows, or it is obvious, that the evidence is false (DR 7–102[a][6]); counseling or assisting the client in conduct the lawyer knows to be illegal or fraudulent (DR 7–102[a][7]); and knowingly engaging in other illegal conduct (DR 7–102[a][8]; *see also,* EC 7–26). Additionally, DR 7–102(b)(1) mandates that "[a] lawyer who receives information clearly establishing that ... the client has, in the course of the representation, perpetrated a fraud upon a ... tribunal shall promptly call upon the client to rectify the same, and if the client refuses or is unable to do so, the lawyer shall reveal the fraud to the affected ... tribunal, except when the information is protected as a confidence or secret" (emphasis added).

In accordance with these responsibilities, defense counsel first sought to dissuade defendant from testifying falsely, and indeed from testifying at all. Defendant insisted on proceeding to give the perjured testimony and, thereafter, counsel properly notified the court (*see, People v. Salquerro,* 107 Misc.2d 155, 433 N.Y.S.2d 711, *supra; see also, People v. Campos,* 249 A.D.2d 237, 672 N.Y.S.2d 680 [counsel properly informed the court about defendant's confidential plan to have counsel participate in laying a false foundation for a speedy trial application], *lv denied* 92 N.Y.2d 923, 680 N.Y.S.2d 464, 703 N.E.2d 276).

The intent to commit a crime is not a protected confidence or secret (*see, Nix, supra,* 475 U.S. at 174, 106 S.Ct. 988 [attorney's duty of confidentiality does not extend to a client's announced plans to engage in criminal conduct]; *see also,* DR 4–101[c][3] [22 NYCRR 1200.19] [a lawyer may reveal the intention of his client to commit a crime]). Moreover, in this case defense counsel did not reveal the substance of any client confidence as defendant had already admitted at a pre-trial hearing that he had forced one of his accomplices to participate in the crime under threat of death.

Finally, defendant contends that his counsel should have sought to withdraw from the case. However, substitution of counsel would do little to resolve the problem and might, in fact, have facilitated any fraud defendant wished to perpetrate upon the court. We agree with *Salquerro* that withdrawal of counsel could present other unsatisfactory scenarios which ultimately could lead to introduction of the perjured testimony in any event or further delay the proceed-

ings (*see, Salquerro, supra,* 107 Misc.2d, at 157–158, 433 N.Y.S.2d 711).

In this case, defendant was allowed to present his testimony in narrative form to the jury. The remainder of defense counsel's representation throughout the trial was more than competent. The lawyer's actions properly balanced the duties he owed to his client and to the court and criminal justice system; "since there has been no breach of any recognized professional duty, it follows that there can be no deprivation of the right to assistance of counsel" (*Nix, supra,* 475 U.S. at 175, 106 S.Ct. 988; *see also, People v. Baldi,* 54 N.Y.2d 137, 151–152, 444 N.Y.S.2d 893, 429 N.E.2d 400).

*DePallo,* 729 N.Y.S.2d 649, 754 N.E.2d at 753–55 (footnotes omitted).

Counsel did not, as petitioner suggests, "betray" him. Pet'n for a Writ of Habeas Corpus at 13. Counsel fulfilled his ethical obligations to the court and to his client. He defended his client vigorously but he refused to breach his ethical responsibility not to aid petitioner in committing perjury. Counsel acted professionally and ethically, even if it would have been preferable for counsel to have met with the trial judge in an *ex parte* conference that included petitioner. Petitioner was in no way prejudiced by counsel's behavior. The conclusion of the New York Court of Appeals that petitioner was not denied the effective assistance of counsel was reasonable. Habeas corpus relief on this claim is not warranted.

VIII. Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right.

SO ORDERED.